**Affidavit of Joseph F. Noone in support of
a Criminal Complaint for Arrest Warrant**

I, Joseph F. Noone, having been duly sworn upon his oath according to law, deposes and says:

1. I am a Special Agent of the Federal Bureau of Investigations (FBI), United States Department of Justice, and am empowered by law to investigate and make arrests for offenses enumerated in Section 2516 of Title 18 of the United States Code. As such, I am an "investigative or law enforcement officer" within the meaning of Title 18, United States Code, Section 2510(7). I am currently assigned to the Scranton, Pennsylvania Resident Office of the FBI.

2. I have been employed as a Special Agent with the FBI since January 2002. Since January 2002, I have specialized in the investigation of criminal enterprise cases and have participated in numerous such drug trafficking investigations.

3. During my career as a Special Agent, I have been trained in various aspects of law enforcement, including the investigation of narcotics offenses. Throughout my law enforcement career, I have participated in many narcotics investigations, including numerous investigations involving consensually monitored telephone calls and several investigations involving consensually intercepted wire communications. In the course of those investigations, I have conducted consensually monitored telephone calls and wire communications, and was the affiant for numerous search warrants, conducted surveillance, made arrests and secured relevant information using other investigative techniques. In many of the investigations in which I have participated I have acted as the lead investigative agent.

4. As one of the lead investigative agents for this case in the Middle District of Pennsylvania (MDPA), I have co-supervised the investigation with FBI Task Force Officer (TFO) Daniel Mimnaugh and am thoroughly familiar with the information contained in this affidavit, either through personal investigation or through discussions with other officers and agents who have conducted interviews, or who have themselves obtained information, which they in turn have

reported to me.

5. Since this affidavit is being submitted for the limited purpose of securing an arrest warrant, I have not included each and every fact known to me concerning this investigation, but have set forth only those facts relevant and necessary to establish probable cause to believe that Robert F. Evans Jr., who is a Hughestown Borough Police Officer, illegally distributed Oxycodone, which is a Schedule II Controlled Substance, in violation of Title 21, United States Code, Section 841.

## PROBABLE CAUSE

6. On July 26, 2013, your affiant interviewed John Nat regarding his involvement in with the purchase of controlled substances. Nat admitted the following: Nat purchased Oxycodone, Percocet, Vicodin, and other scheduled drugs from Robert Evans and associates of Evans for the past two years. Nat purchased quantities of five to twelve Schedule II prescription pills from Evans on a weekly basis for the past two years at a cost of $30.00 to $60.00 per pill. Nat would either place a telephone call or text message to Evans to place an order for the Scheduled drugs. Nat would then meet Evans to provide Evans with cash. Evans would then meet Nat a few hours later with the controlled substances. Nat described the following locations as places Nat would meet Evans to conduct the drug transactions: the Car Wash on Foote Avenue, Duryea or the Hughestown Borough Police Station. Nat stated that most of the times Evans distributed the controlled substances to Nat, Evans was on duty as a Hughestown Borough Police Officer. Nat claimed that Evans would be in full uniform with a firearm on his side, and driving the Hughestown Borough marked police vehicle.

7. On July 26, 2013, at approximately 2:30 PM, at the direction of your affiant, John Nat placed a consensual recorded telephone call to Robert Evans to make a controlled buy of drugs from Evans. Evans answered the telephone and asked Nat, "Why are you calling me?" "What about the wife?" "What about the phone records?" "The phone records are going to get us in trouble." Nat told Evans that he was hurting for pills and everything would be alright. Evans then stated, "I have 15s (referring to Oxycodone 15 mg pills)" "I need the bread in my hand by

5:00 PM. "   "I was just texting the person as we were talking right now."

8. On July 26, 2013, at approximately 2:45 PM 26, at the direction of your affiant, John Nat placed a consensual recorded telephone call to Robert Evans to advise Evans that Nat's wife would be coming home from work at 3:30 PM and Nat would be unable to meet with Evans to conduct the drug transaction after 3:30 PM. Evans stated, "I don't get out of work until 5:00 PM." Nat advised Evans that Nat would re-contact Evans when he had money and was able to get out of the house undetected by his wife to meet Evans.

9. On July 29, 2013, at approximately 4:40 PM, at the direction of your affiant, John Nat placed a consensual recorded telephone call to Robert Evans to make a controlled buy of drugs from Evans. Evans asked Nat how much money Nat had. Nat told Evans he had $100.00. Evans told Nat that $100.00 would get him six or seven pills. Evans and Nat agreed to meet at the Car Wash on Foote Avenue, Duryea, for Nat to front Evans the $100.00 cash. Evans told Nat that he would contact Nat at 8:00 PM to provide Nat with the pills. At approximately 4:55 PM, at the direction of your affiant, and while wear a recording device, Nat met with Evans at the Car Wash and provided Evans with the $100.00 cash for the pills. During the consensually recorded meeting, Evans told Nat that he would meet with Nat at 8:00 PM with the pills. Evans arrived at the Car Wash driving a Ford Fusion, four door sedan, grey in color with tinted windows.

10. On July 29, 2013, at approximately 7:30 PM investigators met in the parking lot of the Kmart, Pittston Township, to set up surveillance of the previously scheduled 8:00 PM drug transaction between Evans and Nat. At approximately 8:00 PM, Nat arrived at the Kmart and at the direction of your affiant, Nat placed several consensual recorded telephone calls to Evans which all went unanswered and were forwarded to Evans' voice mail. At approximately 8:20 PM, your affiant directed Nat to depart the area of Kmart and to contact your affiant should Evans make any attempts to contact Nat. Nat acknowledged he understood and departed the area. At approximately 8:30 PM, your affiant observed a Ford Fusion, four door sedan, grey in color, with tinted windows driving slow through the parking lot of Kmart near the area where investigators were staged for the drug transaction. This vehicle was similar to the vehicle driven by Evans.

Your affiant and FBI Task Force Officer (TFO) Daniel Mimnaugh followed the vehicle until it came to a stop in front of Redner's Grocery Store which is adjacent to Kmart. Evans exited his vehicle at which time your affiant and TFO Mimnaugh approached Evans and began to interview Evans. Your affiant asked Evans if Evans had any weapons on his person. Evans replied, "My gun is in my vehicle." TFO Mimnaugh advised Evans that he was not under arrest, he was free to leave at any time, and he did not have to answer any questions. Evans replied, "I want to cooperate." Evans provided the following statement voluntarily and against his penal interest. Evans stated that he distributed Oxycodone 15 mg and 30 mg pills to John Nat, at least twelve times over the last twelve months. Evans stated that he was on duty as a police officer and in uniform at least two or three of the times he distributed Oxycodone pills to Nat. Evans advised that he has a prescription for Oxycodone 30 mg pills prescribed to him by Doctor Curt Moran. Evans stated that he also purchases Oxycodone 15 mg and 30 mg pills from his associate Sid Lewis. Lewis was providing Evans with the Oxycodone 15 mg pills that Evans was going to provide to Nat as talked about during the July 26, 2013 consensually recorded telephone call between Nat and Evans. Evans stated that, "In the big picture, yes he is a drug dealer, same with me." Evans was referring to Lewis and himself. Evans stated to TFO Mimnaugh, "I dealt pills with a gun on my hip." Evans stated that he purchased Oxycodone 15 mg pills from Lewis approximately twenty-four times for $15.00 per pill. Evans would then redistribute those pills to Nat. Evans stated that he also provided rides in the Hughestown Borough marked police vehicle, while Evans was on duty, to John Ames, (described by Evans as a known drug addict), to Wilkes-Barre, so Ames could purchase illegal drugs. Evans also provided rides to Ames in his personal vehicle, so Ames could purchase illegal drugs from a residence on River Street in Wilkes-Barre.

11. On July 29, 2013, your affiant interviewed Sid Lewis regarding his involvement with the distribution of controlled substances. Lewis provided the following statement: Lewis admitted to distributing Oxycodone pills to Robert Evans, who would then redistribute the Oxycodone pills to John Nat and others. Lewis described Evans and himself as long-time childhood friends. Lewis advised he distributed Oxycodone 15 mg pills to Evans on Friday July 26, 2013, at

approximately 5:00 PM or 6:00 PM. Lewis advised that he had received a request from Evans for Oxycodone 15 mg pills earlier in the day on July 26, 2013. Lewis advised that he also distributed Oxycodone pills to John Nat in the past, but he realized that Nat had a severe pill addiction and no money so Lewis stopped providing pills to Nat. Lewis advised that both he and Evans received these scheduled controlled substances from an individual named Billy Tucker. Lewis advised that he traded Tucker four handguns for approximately 100 Oxycodone 30 mg pills. Lewis advised that Evans owed money to Tucker therefore Tucker stopped dealing with Evans directly. Evans would then ask Lewis to purchase Oxycodone pills from Tucker for Evans.

12. On August 1, 2013, your affiant received a voice mail message from Robert Evans at approximately 9:43 AM from Evans' cellular telephone number 570-237-5024, asking your affiant to contact Evans. Your affiant telephonically contacted Evans, at which time Evans provided the following information: Evans advised that he was reinstated as a Police Officer on August 9, 2012. Evans purchased a Glock model 23, .40 caliber handgun two weeks prior to that date. That firearm is the only weapon owned/registered to Evans. Evans carries that weapon while he is on duty. Evans advised that on the date of July 29, 2013, he was scheduled to have court, so he dressed in street clothing and placed his firearm inside his vehicle in the morning of July 29, 2013. Evans advised that he did not remove his firearm from his vehicle until after the encounter with your affiant in the Kmart parking lot on July 29, 2013 at 8:30 PM.

13. Evans also stated that he provided Kenneth Shotwell, a Dupont Borough Police Officer, with Oxycodone 30 mg pills approximately twenty-five times, with Shotwell receiving four or more pills on each occasion. Evans advised that Shotwell is a prescription pill addict and has had problems with pills in the past.

## CONCLUSION

14. Your affiant believes, based upon the above, there is probable cause to believe that Robert F. Evans, Jr. did commit the following offense against the United States; namely to knowingly, intentionally and unlawfully distribute and possess with the intent to distribute Oxycodone, a Schedule II controlled substance, in violation of Title 21, United States Code, Sections 841.

15. Your affiant, having signed this affidavit, under oath as to all assertions and allegations contained herein, state that its contents are true and correct to the best of my knowledge, information and belief.

Joseph F. Noone
Special Agent
Federal Bureau of Investigation

Sworn and subscribed before
me this ___1st___ day of August 2013,
at Wilkes-Barre, Pennsylvania.

KAROLINE MEHALCHICK
United States Magistrate Judge